**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**THE KEETON FIRM LLC**
Steffan T. Keeton*
100 S Commons, Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com
*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Jarhonda Jones, individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REED'S, INC.,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Jarhonda Jones brings this action on behalf of herself and all others similarly situated against Defendant REED'S, INC. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its beverages (the "Products").[1]

2.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign focused on claims that appeal to health-conscious consumers – specifically the importance of real fruit and its presence in the Products.

3.     Defendant engages in a deceptive marketing campaign to convince consumers that the Products contain material amounts of the actual fruits shown in the marketing[2] and on the labeling[3] of the Products, they are nutritious and healthful to consume, and are more healthful than similar products.

4.     Notably, the Products' dark red color  combined with packaging that displays images of fresh cherries and prominently states, "HANDCRAFTED BLACK

---

[1] At the time of this filing, the following Virgil's products are included in this definition: HANDCRAFTED BLACK CHERRY and BLACK CHERRY ZERO. This definition is not exhaustive, and shall include all of Defendant's products that are similarly deceptively marketed.

[2] Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Products' labels, viral marketing, incentives, and websites.

[3] The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

GOOD GUSTAFSON AUMAIS LLP

CHERRY," "This black cherry indulgence will make every cherry lover smile," and "with the perfect cherry tang" establishes this belief with reasonable consumers:



5.    Defendant also promotes these same representations through a coordinated marketing campaign:

GOOD GUSTAFSON AUMAIS LLP

CLASS ACTION COMPLAINT






CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP





CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

GOOD GUSTAFSON AUMAIS LLP



10

11

12

13

14

15

16

17

18

19

20

21



22

23

24

25

26

27

28

– 5 –





1
2
3
4
5
6
7
8
9
10
11
12

**GOOD GUSTAFSON AUMAIS LLP**



13    6.    The deception lies in the fact that the Products are devoid of real fruit.

14 Rather than containing real cherries, the Products contain "natural flavors" and none

15 of the vibrantly referenced and depicted cherries.

16

17    7.    Reasonable consumers purchased the Products believing, among other

18 things, that they were accurately represented. Specifically, reasonable consumers

19 believed that the Products contained cherries, or enough cherry to independently

20 characterize the Product. Reasonable consumers would not have purchased the

21 Products if they had known about the misrepresentations and omissions, or would

22 have purchased them on different terms.

23

24    8.    Defendant violated the trust of Plaintiff and Class Members because the

25 Products are not the fruit-packed beverage that Defendant's marketing and labeling

26 represents.

27
28

9. Relying on Defendant's representations, consumers that seek fruit-focused beverages only later realize that their purchase of Defendant's Products was a fruitless endeavor.

10. Plaintiff's interpretation of Defendant's representation was reasonable.

11. Consistent with this reasonable belief, federal agencies have crafted regulations to protect consumers from deceptive cherry representations.

12. Plaintiff brings this action individually and on behalf of those similarly situated and seek to represent a National Class and a California Class. Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits that Defendant has enjoyed from their deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's deceptive conduct in the labeling and marketing of the Products.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Defendant. Defendant purposefully avails itself of the California consumer market and distributes the Products to many locations within this District and hundreds of retail locations throughout the State of California, where the Products are purchased by thousands of consumers every day.

14. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00,

GOOD GUSTAFSON AUMAIS LLP

1   exclusive of interest and costs. Plaintiff alleges that the total claims of individual

2   members of the proposed Class (as defined herein) are well in excess of $5,000,000.00

3   in the aggregate, exclusive of interest and costs.

4       15.    Venue is proper in this District under 28 U.S.C. § 1391(a). Plaintiff's

5   purchases of Defendant's Products, substantial acts in furtherance of the alleged

6   improper conduct, including the dissemination of false and misleading information

7   regarding the nature, quality, and/or ingredients of the Products, occurred within this

8   District and the Defendant conducts business in this District.

9

10              **DIVISIONAL ASSIGNMENT**

11      16.    Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events

12  giving rise to the claims arose in San Francisco County, and this action should be

13  assigned to the San Francisco Division.

14

15                    **PARTIES**

16      17.    Plaintiff Jarhonda Jones is a citizen of California.

17          a.  Prior to her purchase, Plaintiff saw and relied on Defendant's marketing

18              and labeling representing that the Products contained cherries or

19              enough cherry to independently characterize the Product.

20          b.  Plaintiff wished to purchase the beverages for personal consumption.

21              When Plaintiff saw Defendant's misrepresentations prior to and at the

22              time of purchase, she relied on Defendant's prominent representations

23              and claims about the Product. Specifically, that it contained cherries or

24              enough cherry to independently characterize the Product.

25

26

27

28

CLASS ACTION COMPLAINT

GOOD GUSTAFSON AUMAIS LLP

GOOD GUSTAFSON AUMAIS LLP

c.  Plaintiff relied on the Defendant's cherry representations, including but not limited to, that the Product is "HANDCRAFTED BLACK CHERRY" as well as the fruit imagery that surrounds the entire packaging.

d.  Plaintiff has purchased the Products on multiple occasions within the past three years in the State of California. Plaintiff's most recent purchase of the Products occurred in 2023, when she purchased the 12 oz. bottle of the "HANDCRAFTED BLACK CHERRY" beverage from a grocery store in San Francisco, California.

e.  Plaintiff would purchase the Products again in the future if Defendant changed the composition the Products so that it conformed to its labeling and marketing.

18.   Defendant REED'S, INC. is a Delaware corporation with its principal place of business located in Norwalk, Connecticut.

a.  Defendant produces consumer products that it markets and distributes to consumers and retail stores across the United States including stores physically located in the State of California. Defendant additionally markets and distributes products through e-commerce stores that ship to consumers throughout the nation.

19.   Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

20.   Whenever reference is made in this Complaint to any representation, act, omission, or transaction of a defendant, that allegation shall mean that the

defendant did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## SUBSTANTIVE ALLEGATIONS

**A. Defendant deceives consumers by misrepresenting that the Products contain cherries, or enough cherries to independently characterize the Product.**

21.     Consumers increasingly and consciously seek out fruit-focused foods and beverages. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.[4]

22.     As a result, consumers are willing to pay, and have paid, a premium for products that represent that they contain (or are derived from) material amounts of real fruit over products that do not represent to contain material amounts of real fruit.[5]

23.     Companies such as the Defendant capitalize on the consumer's demand for real fruit and generate increased unit sales, revenue, and profit by making fruit representations.

24.     Further, consumers rely on label representations and information in making purchasing decisions.

_____

[4] *See, e.g., Fruit Snacks Sales Rise by 162% Amid COVID-19 Pandemic* (April 29, 2020) https://www.prnewswire.com/news-releases/fruit-snacks-sales-rise-by-162-amid-covid-19-pandemic-301049556.html.

[5] *See, e.g.*, Mondelez International, *Fruitful Business: Fruit and Veggie Snack Trend Grows Stronger*, https://www.letschatsnacks.com/fruitfulbusiness ("Nielsen reveals that the snackable fruit and vegetable category is ripe with revenue, generating sales of $16.3 billion in the year ended May 27, 2017").

GOOD GUSTAFSON AUMAIS LLP

25.     Knowing this, Defendant prominently features real fruit representations throughout its packaging.

26.     Notably, the 12 oz. glass bottle version of the Product's principal display panel displays images of fresh cherries while the packaging prominently states that the "BLACK CHERRY" beverage is a "black cherry indulgence" that "will make every cherry lover smile" with its "perfect cherry tang."

 

GOOD GUSTAFSON AUMAIS LLP

27.    Notably, the 12 oz. can of the ZERO version's principal display panel displays images of fresh cherries while the packaging prominently uses deep red coloring in addition to "BLACK CHERRY."



GOOD GUSTAFSON AUMAIS LLP

28.    By prominently making these cherry representations, Defendant conveys to consumers that the Products contain cherries, or enough cherries to independently characterize the Product.

29.    The Products do not contain cherries, or enough cherries to independently characterize the Product.

30.    Instead, they contain only "NATURAL FLAVORS."

SPARKLING FILTERED WATER, CANE SUGAR, NATURAL FLAVORS, JUICE FOR COLOR, MALIC ACID.

31.    To offset its lack of real fruit, Defendant overcompensates by plastering cherry imagery throughout the Products' packaging and marketing.

32.    Based on the representations that appear in the marketing and on the packaging of the Products, Plaintiff reasonably believed that the Products contained cherries, or enough cherries to independently characterize the Product.

33.    Taken as a whole, the words and images used on Defendant's packaging leads consumers to believe that the Products contain cherries, or enough cherries to independently characterize the Product.

34.    Not only are consumers misled but also competing products sharing the same shelves as Defendant's Products are placed at a competitive disadvantage.

35.    For example, these competing products are sold in the same stores as Defendant's Products yet - unlike the Products - these items correctly represent the presence of cherries in the products:

    a.    Frostop's Black Cherry, Wild Bill's Black Cherry, and Stewart's Black Cherry beverages inform consumers that they include no cherries and are rather "Naturally and Artificially Flavored."





b. Market District's Black Cherry, Dr. Brown's Black Cherry, and

Waterloo's Black Cherry inform consumers that they are "Flavored With

Other Natural Flavors."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP





36.    Defendant's deceptions harm not only consumers but also companies that accurately represent their products by diverting attention and dollars away from competitors that are good faith market participants.

**B.  Defendant perpetuates this deception in its advertising and marketing.**

37.    Defendant's deceptions are not limited to the packaging. They further the deception through targeted marketing and advertising.

38.    For example, its marketing campaigns perpetuate the material presence of cherry myth while the Products do not contain any cherries:

 





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOD GUSTAFSON AUMAIS LLP








39.     Instead, the Products do not contain cherries or enough cherries to independently characterize the Product.

40.     Defendant's claims about the fruit content of the Products are deceptive. Although the marketing and labeling of the Products depict certain fruits, those fruits are not present, or not present enough to independently characterize the Product.

41.     As a result of their unlawful, unfair, and fraudulent advertising and marketing practices, Defendant has made millions at the expense of the public health and trust, and continue to make millions through these unfair, unlawful and fraudulent advertising and marketing practices.

**C. Defendant Violates State and Federal Law.**

42.     The "FDCA" is a federal statute that comprehensively, but not exclusively, regulates the sale of food to consumers.

43.     One of the purposes for the enactment of the FDCA was to prevent consumer deception in food labeling.

CLASS ACTION COMPLAINT

44.     The FDCA prohibits the misbranding of food.  21 U.S.C. §331(b).

45.     The FDCA prohibits "misbranded foods in interstate commerce.

46.     The term "food" means "articles used for food or drink for man...."  21 U.S.C. § 321(f).

47.     The FDCA vests the FDA with the authority to ensure that foods are "properly labeled."  21 U.S.C. § 393(b)(2)(A).

48.     One way a food can be misbranded is if its labeling is "false or misleading in any particular."  21 U.S.C. § 343(a)(1).

49.     The Food and Drug Administration (hereafter also referred to as " FDA"), pursuant to the authority granted to it by the FDCA, has promulgated comprehensive regulations pertaining to requirements for food labeling (hereafter also referred to as "FDA Regulations").  21 C.F.R. § 101.1 *et seq.*

50.     The FDA has promulgated regulations in Title 21 of the *Code of Federal Regulations* to implement the FDCA.

51.     The FDA's flavoring regulations govern the labeling of flavors on food labels (hereafter also referred to as "FDA Flavoring Regulations" or "Flavoring Regulations") where the food does not contain the actual food ingredients, or enough of the actual food ingredients that are identified on the Principal Display Panel of the food to independently characterize the food.  21 C.F.R. 101.22.

52.     The *Code of Federal Regulations* provides that if the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of

ingredients, such flavor shall be considered the characterizing flavor and shall be

declared in the following way:

> "(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that: (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."
> ...
> (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i) (1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

21 C.F.R. §101.22, *et seq.*

53.     If the label of a food "makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," then "such flavor shall be considered the characterizing flavor and shall be declared" in specific ways.  21 U.S.C. § 101.22(i).

54.     The characterizing flavor must be "followed by the word 'flavored' in letters not less than on-half the height of the letters in the name of the characterizing flavor."  21 U.S.C. § 101.22(i)(I)(I).

55.     The Flavoring Regulations provide that if a food does not contain the characterizing ingredient, or enough of the characterizing ingredient to independently characterize the food in accordance with the actual food ingredient

identified on the label, then the food label must comply with the Flavoring Regulations and place the word "flavored," in letters not less than one-half the height of the letters of the primary characterizing ingredient, immediately after the name of the primary characterizing ingredient whose ingredient is not contained within the food.

56.     The Flavoring Regulations impose a duty on Defendant to disclose to the consuming public since the Products do not in fact contain real fruit ingredients from cherries, or enough of real fruit ingredients from cherries to independently characterize the Products, but instead are flavored by flavor compounds that are created to mimic and masquerade as the taste of the real fruit ingredients from cherries, then the Principal Display Panels of the Products must indicate this fact by stating the word  "flavored" immediately after the word "Cherry."

57.     Defendant's labeling, advertising, and sale of the Products are therefore false and misleading and in violation of the Flavoring Regulations because of Defendant's failure to add the word "flavored" on the Products' Principal Display Panels after the word cherry whose real fruit ingredients are not contained within the Products, or not enough of the real fruit ingredients from cherries are contained within the Products.

58.     In order for Defendant to be in compliance with state and federal food labeling laws, and to truthfully convey to consumers the fact that the real fruit ingredient is not contained, or not enough of the real fruit ingredient is contained in the Products to independently characterize the Products, Defendant should have labeled the Products in compliance with the Flavoring Regulations and added the word flavored after the fruit ingredient that is not actually contained in the Products,

or that is not contained in a sufficient amount to independently characterize the Products.

59.     Defendant deceives consumers by failing to comply with federal and state food labeling laws which require Defendant to inform consumers that if the Products do not contain real fruit ingredients from any of the displayed real fruits, or do not contain enough real fruit ingredients from any of the displayed real fruits, then Defendant must comply with federal regulations relating to "flavorings" that require Defendant to include the word "flavored" on the front label of any beverage after any named fruit whose real fruit ingredients are not contained in the beverage, or not enough real fruit ingredients are contained in the beverage to independently characterize the beverage.

60.     If the food does not in fact contain any of the charactering ingredient, or not enough characterizing ingredient to independently characterize the food, then the food must be labeled in accordance with the flavoring regulations.  21 U.S.C. § 101.22(i).

61.     The Products contain flavors that mimic the taste of the flavor of the fruit identified on the labels.

62.     Defendant's Products are misbranded and unlawfully labeled as a result of Defendant's failure to disclose on the label of their beverages that the Products are flavored by natural flavors and do not in fact contain any of the charactering ingredient, the fruit or fruit juice, identified on the label, or not enough of the fruit or fruit juice to independently characterize the Products.

63.     Since the front panel of Defendant's Products makes no reference to flavors, the Products are misbranded.

GOOD GUSTAFSON AUMAIS LLP

64.     By characterizing its Products, Defendant has, and continues to, mislabel and falsely advertise the Products in violation of California and federal law.

65.     If the food does not in fact contain any of the charactering ingredient, or not enough of the characterizing ingredient to independently characterize the food, then the food must be labeled in accordance with the flavoring regulations.  21 U.S.C. § 101.22(i).

66.     In order to comply with the flavoring regulations, if cherry is the characterizing flavor, the words "cherry flavored" must appear prominently on the front label.

67.     Plaintiff does not allege causes of action under the FDCA and regulations promulgated by the FDA.  Plaintiff relies on the FDCA and the regulations promulgated by the FDA only to the extent that such laws and regulations have been independently and separately enacted as state laws or regulations and also provide a basis of liability under state statutory and state common law.

68.     Plaintiff is suing for Defendant's conduct that violates the FDCA.

69.      Plaintiff is not suing because Defendant's conduct violates the FDCA.

70.     Plaintiff is suing because Defendant's conduct violates state laws of California.

71.      Plaintiff's state law claims are not preempted by the federal law because California law mirrors federal law and therefore the federal and state food labeling laws prohibit misbranded foods in an identical manner.

72.    In making food purchasing decisions, reasonable consumers reasonably rely on the name of the Product on the food labels, including the images on the Product, to inform them as to the Product's flavorings and ingredients.

73.    The presence of real fruit ingredients in food products, a premium ingredient, has a material bearing on consumers' purchasing decisions.

74.    When consumers purchase food products that are labeled as containing a fruit ingredient, the consumers reasonably believe that the food products do, in fact contain the particular food ingredient.

75.    When consumers purchase such foods, the foods are considered misbranded because they lead consumers to believe that the foods contain the specific food ingredients, when in fact they do not.

76.    Consumers are harmed when they are induced to purchase and pay a price premium for food products based on untrue and misleading statements on food labels.  The injury results from the absence of the fruit ingredients, or the absence of enough of the food ingredients to independently characterize the Products.

**D. The Products are misbranded.**

77.    Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a).

78.    The presence of depicted fruits in the Products has a material bearing on price and consumer acceptance. Moreover, Defendant's marketing and labeling of the Product—including imagery and references of certain fruits—creates the erroneous impression that the fruit depicted in the Products' marketing and labeling is present in an amount greater than is actually the case.

GOOD GUSTAFSON AUMAIS LLP

79.    Defendant markets, advertises, and sells the Products in which cherry is presented as one of the characterizing ingredients despite the fact that the Products do not contain cherry or enough cherry to independently characterize the Products.

80.    Cherry is the characterizing ingredient in the Product.  The term "cherry" is used in the Product's name and appears in the vignette on the Beverage's Principal Display Panel.

81.    When the food is expected to contain a characterizing ingredient which it does not contain, but rather is naturally flavored then the name of the characterizing flavor "shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor." In this instance, to comply with both federal and state food labeling laws, the Product's Principal Display Panel should state "cherry flavored."

82.    Notably, the Product is flavored by the addition of "natural flavors." Presumably, cherry is among those flavors. If not, however, Defendant must indicate the Product is in part artificially flavored.  *See, e.g., Silva v. Unique Bev. Co., LLC*, No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 93625, at *1 (D. Or. June 15, 2017) ("where none of the natural flavor used in the food is derived from the fruit identified as the characterizing flavor, the food may be labeled artificially flavored").

83.    Reasonable consumers rely on product labels in making their purchasing decisions.  The existence of such product diversity (naturally flavored, flavored with other natural flavors, artificially flavored and unflavored (because it contains its characterizing ingredient) demonstrates the materiality of the Principal Display Panel to consumers and underscores the need for label accuracy.

84.     Indeed, the marketplace is replete with examples of participants properly differentiating between beverages that are flavored by their characterizing ingredient and those that are not.

85.     The labeling of the Product violates the express mandates of each of these sections of the Federal Food, Drug and Cosmetics Act and the correlative mandates under state law.

86.     Because the Defendant fails to reveal the basic nature and characterizing properties of the Products (specifically, the true cherry content), Defendant's Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

87.     Moreover, state law forbids the misbranding of food in language largely identical to that found in the FDCA.

88.     By misrepresenting the basic nature and characterizing properties of the Products, Defendant violated these federal and state regulations and misleads Plaintiff and consumers alike.

89.     To be clear, Plaintiff does not allege any claims pursuant to the FDCA and relies on these regulations only to the extent they provide a predicate basis for liability under state and common law, as set forth herein.

90.     The Products' labeling shows none of the required disclosures.

91.     The Products therefore violate federal and state consumer protection laws.

GOOD GUSTAFSON AUMAIS LLP

92.    The U.S. Food, Drug, and Cosmetic Act regulations require that a food's label accurately describe the food product, its characterizing flavors, and all ingredients. *See*, 21 C.F.R. 102.5(a).

93.    California's Sherman Law has adopted the entirety of the FDCA.

94.    Under federal and state law, any recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."

95.    Because the Defendant fail to reveal the basic nature and characterizing properties of the Products (specifically, the source of the flavoring), Defendant's Products are not only sold with misleading labeling but also misbranded under Sections 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as it is currently labeled. *See* 21 U.S.C. § 331.

96.    Moreover, California law forbids the misbranding of food in language largely identical to that found in the FDCA.

97.    The Products are misbranded under California's Sherman Law, Cal. Health & Safety Code §§ 109875-111915. The Sherman Law expressly incorporates the food labeling requirements set forth in the FDCA, *see* Cal. Health & Safety Code § 110100(a), and provides that any food is misbranded if its nutritional labeling does not conform to FDCA requirements. *See id.* § 110665; *see also id.* § 110670.

98.    The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* §

110765: or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

99.     By misrepresenting the basic nature and characterizing properties of the Products, Defendant violate these federal and state regulations and mislead Plaintiff and consumers alike.

### E. Reasonable consumers relied on Defendant's misrepresentations to their detriment.

100.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

101.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

102.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled the Plaintiff and the Class Members.

### F. Defendant's wrongful conduct caused Plaintiff's and the Class Members' injuries.

103.     Defendant knows that consumers are willing to pay more for beverages that contain cherries or enough cherries to independently characterize the Product due to the perception that the beverages are higher quality and a healthier alternative to the competition.

104.     As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Products that it would not have otherwise earned. Plaintiff and Class Members paid money for beverages that are not

GOOD GUSTAFSON AUMAIS LLP

what they purported to be or what they bargained for. They paid a premium for the Products when they could have instead bought other, less expensive products that do not purport to contain cherries, or enough cherries to independently characterize the Product.

105.    In making the false and misleading representations described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, a product labeled and advertised as containing cherries, or enough cherries to independently characterize the Product.

106.    As an immediate, direct, and proximate result of Defendant's false and misleading representations, Defendant injured the Plaintiff and the Class Members in that they:

  a.  Paid a sum of money for Products that were not what Defendant represented;

  b.  Paid a premium price for Products that were not what Defendant represented;

  c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

  d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

  e.  Could not be used for the purpose for which they were purchased; and

  f.  Were of a different quality than what Defendant promised.

107.    Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have been willing to pay

the same amount for the Products they purchased, and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

108.    Plaintiff and the Class Members paid for Products that were purported to contain cherries, or enough cherries to independently characterize the Product. but received Products that do not contain cherries, or enough cherries to independently characterize the Product.  The products Plaintiff and the Class Members received were worth less than the products for which they paid.

109.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the representations.

Plaintiff and the Class Members all paid money for the Products. However, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

**CLASS DEFINITIONS AND ALLEGATIONS**

110.    Plaintiff, pursuant to Federal Rule of Civil Procedure 23, brings this action on behalf of the following classes:

    a.  California Class: All persons who purchased Defendant's Products within the State of California and within the applicable statute of limitations;

GOOD GUSTAFSON AUMAIS LLP

b.  Nationwide Class: All persons who purchased Defendant's Products within the United States and within the applicable statute of limitations period (collectively, the "Class," "Classes," and "Class Members").

111.  Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, those who purchased the Products for resale, all persons who make a timely election to be excluded from the Classes, the judge to whom the case is assigned and any immediate family members thereof, and those who assert claims for personal injury.

112.  The members of the Classes are so numerous that joinder of all Class Members is impracticable. Defendant has sold, at a minimum, hundreds of thousands of units of the Products to Class Members.

113.  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class Members include, but are not limited to the following:

a.  whether Defendant misrepresented material facts concerning the Products on the packaging of every product;

b.  whether Defendant's conduct was unfair and/or deceptive;

c.  whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiff and the Class;

d.  whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

GOOD GUSTAFSON AUMAIS LLP

e.   whether Defendant breached implied and express warranties to Plaintiff and the Class; and

f.   whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

114.   Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the classes, purchased Defendant's Products bearing the flavor representations and Plaintiff sustained damages from Defendant's wrongful conduct.

115.   Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.

116.   Plaintiff has no interests which conflict with those of the Classes.

117.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

118.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

119.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Unfair Competition Law ("UCL")
### Business and Professions Code § 17200 *et seq.*
### (On Behalf of the California Class)

120.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

121.     Plaintiff brings this cause of action pursuant to the UCL on her own behalf and on behalf of all other persons similarly situated.

122.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A. Unfair Prong

123.     Under the UCL a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the

GOOD GUSTAFSON AUMAIS LLP

consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

124.    Defendant's advertising and labeling of the Products' cherry flavor being exclusively sourced by cherries, is false, misleading, and deceptive.

125.    Defendant's false advertising of the Products causes injuries to consumers, who do not receive the promised benefits from the Products in proportion to their reasonable expectations.

126.    Through false, misleading, and deceptive labeling of the Products, Defendant seek to take advantage of consumers' desire for food products that contained cherries or enough cherry to independently characterize the Product, while reaping the financial benefits of manufacturing lower quality Products.

127.    When Defendant labels and markets the Products' with these unlawful and deceptive flavor representations, its actions are  false, misleading, and deceptive.

128.    Defendant provides false promises to consumers and stifles competition in the marketplace.

129.    Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

130.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under the UCL. The courts "weigh the utility of the defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F. 3d 1152, 1169 (9th Cir. 2012).

131.    Defendant's material misrepresentations and omissions result in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOD GUSTAFSON AUMAIS LLP**

132.    Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

133.    As described herein, Defendant's conduct impacts the public health of California citizens and the competitive landscape for Defendant's competitors that act as good faith market participants.

134.    Defendant's advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

135.    Defendant knew or should have known of its unfair conduct.

136.    As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of the UCL.

137.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false and deceptive statements about the Products' flavoring.

138.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

139.    Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products. Plaintiff and California Class Members additionally request an order

– 37 –

awarding Plaintiff and California Class Members restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

140.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Products.

**B. Fraudulent Prong**

141.    The UCL considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

142.    Defendant's labeling and advertising of the Products is likely to deceive members of the public into believing that the Products contained cherries, or enough cherry to independently characterize the Product.

143.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

144.    Defendant knew or should have known of its fraudulent conduct.

145.    As alleged in the preceding paragraphs, the material misrepresentations and omissions by Defendant detailed above constitute a fraudulent business practice in violation of the UCL.

146.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant

GOOD GUSTAFSON AUMAIS LLP

could have refrained from marketing and labeling the Products in the unlawful and deceptive fashion described herein.

147.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions daily.

148.    Pursuant to Business & Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

149.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the California Class paid an unwarranted premium for the Products. Plaintiff and the California Class would not have purchased the Products if they had known that the Products did not contain cherries, or enough cherry to independently characterize the Product.

**C. Unlawful Prong**

150.    The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

151.    Defendant's labeling and advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.* (Consumer

Legal Remedies Act), California Business and Professions Code Section 17500, *et seq.* (False Advertising Law), Cal. Heath & Saf. Code § 110765 *et seq.* (the "Sherman Law"), and the common law as described herein.

152.    Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

153.    Defendant knew or should have known of its unlawful conduct.

154.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of the UCL.

155.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from misrepresenting the true characteristics of the Products.

156.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

157.    Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the California Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

GOOD GUSTAFSON AUMAIS LLP

158.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendant purposely deceived consumers into believing that the Products contained cherries, or enough cherry to independently characterize the Product.

159.    As a result of the business acts and practices described above, Plaintiff and members of the California Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

160.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Class are entitled to interest in an amount according to proof.

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**Business and Professions Code § 17500 *et seq*.**
**(On Behalf of the California Class)**

161.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

162.    Plaintiff brings this cause of action pursuant to the FAL on her own behalf and on behalf of all other persons similarly situated.

163.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

164.    Defendant knowingly disseminated misleading claims regarding the Products in order to mislead the public about the flavoring of the Products.

165.    Defendant controlled the labeling, packaging, production and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its representations and omissions about the characteristics and ingredients of the Products were untrue, deceptive, and misleading.

166.    Defendant understand that the public values flavoring that is derived exclusively from the real source ingredient, and this is shown by the numerous statements and cherry images that are prominently featured throughout the Products' packaging.

167.    Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

168.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiff and members of the California Class, pursuant to § 17535, are entitled to an order of this Court enjoining such future wrongful conduct

GOOD GUSTAFSON AUMAIS LLP

on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

169.    Plaintiff and the California Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Products in reliance upon the claims and omissions by Defendant that the Products do not contain cherries or enough cherry to independently characterize the Product, as represented by Defendant's labeling and advertising. Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false and misleading.

170.    Plaintiff and members of the California Class also request an order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

## COUNT III
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### Business and Professions Code § 1750 *et seq.*
### (On Behalf of the California Class)

171.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

172.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against the Defendant.

173.    At all times relevant hereto, Plaintiff and members of the California Class were "consumer[s]," as defined in Civil Code section 1761(d).

174.    At all times relevant hereto, Defendant constituted a "person," as defined in Civil Code section 1761(c).

GOOD GUSTAFSON AUMAIS LLP

175.    At all times relevant hereto, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

176.    The purchases of the Products by Plaintiff and members of the California Class were and are "transactions" within the meaning of Civil Code section 1761(e).

177.    Defendant disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Products contained cherries or enough cherry to independently characterize the Product.

178.    Defendant's representations violate the CLRA in at least the following respects:

    a.    In violation of Civil Code § 1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

    b.    In violation of Civil Code § 1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not; and

    c.    In violation of Civil Code § 1770(a)(9), Defendant advertised the Products with an intent not to sell the products as advertised.

179.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendant of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing them with the opportunity to correct its business practices. Notice was sent via certified mail, return receipt requested on May 28, 2025. As of the date of filing this complaint, Defendant has not responded.

180.    With respect to those violations of Civil Code § 1770 as to which notification was received and accepted by Defendant, Defendant failed to respond to

GOOD GUSTAFSON AUMAIS LLP

– 44 –

Plaintiff's timely demands within 30 days of Plaintiff's notice. Accordingly, Plaintiff hereby requests damages from Defendant as provided for in Civil Code § 1780 including:

      a.  actual damages in excess of the jurisdictional limits of this Court;

      b.  statutory damages allowable under Civil Code § 1780;

      c.  punitive damages;

      d.  attorneys' fees;

      e.  court costs and interest; and

      f.  any other relied which the court deems proper.

181.    Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

182.    Defendant knew or should have known that its Products did not contain the claimed characteristics because Defendant manufactured, marketed and sold its Products without those characteristics that they claimed. Defendant knew or should have known that its representations about its products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiff and members of the California Class.

183.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's and California Class Members' rights and was wanton and malicious.

184.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Products have characteristics which they do not have.

185.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendant of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business

practices. Notice was sent via certified mail, return receipt requested on May 28, 2025. As of the date of filing this complaint, Defendant has not responded.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the National Class)**

186.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

187.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and Class Members in a manner that was unfair, unconscionable, and oppressive.

188.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and the Class Members. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

189.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

190.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

191.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits they received, without justification, from selling the Products to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

192.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf the Class Members, seeks judgment and relief against Defendant, as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as a representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b)  For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

GOOD GUSTAFSON AUMAIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GOOD GUSTAFSON AUMAIS LLP**

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all causes of action so triable.

Dated: July 8, 2025

**Good Gustafson Aumais LLP**

<u>/s/ J. Ryan Gustafson</u>
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

**THE KEETON FIRM LLC**
Steffan T. Keeton*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com
*Pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT