UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JARHONDA JONES,

          Plaintiff,

    v.

REED'S, INC.,

          Defendant.

Case No. 25-cv-07102-JCS

**ORDER DENYING MOTION TO TRANSFER, GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. Nos. 14, 21, 23

## I. INTRODUCTION

Plaintiff Jarhonda Jones brings this putative class action against Defendant Reed's, Inc. ("Reed's"), asserting that its labeling and marketing of certain of its products, including Virgil's Handcrafted Black Cherry and Virgil's Black Cherry Zero, is deceptive and misleading. Reed's brings two motions, which are presently before the Court: 1) Motion to Transfer Venue to the District of Connecticut Pursuant to 28 U.S.C. § 1404(a) ("Transfer Motion"); and 2) Motion to Dismiss First Amended Complaint ("Motion to Dismiss"). The Court finds that the motions are suitable for determination without oral argument and therefore **vacates the motion hearing set for March 11, 2026** pursuant to Civil Local Rule 7-1(b). The Initial Case Management Conference set for the same date will be continued to **March 25, 2026** at 2: 00 p.m. by Zoom webinar. For the reasons stated below, the Transfer Motion is DENIED. The Motion to Dismiss is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.    MOTION TO TRANSFER

### A.    Background

Plaintiff is a citizen of California.  First Amended Complaint ("FAC") ¶ 18.  She alleges that she has purchased the Reed's products that are the subject of her claims ("Products") "on multiple occasions within the past three years in the State of California" and that most recently, she purchased one of the Products in 2023, "when she purchased the 12 oz. bottle of the 'HANDCRAFTED BLACK CHERRY' beverage from a grocery store in San Francisco, California." *Id.*  ¶ 18(g).

Reed's is a Delaware corporation with its principal place of business located in Norwalk, Connecticut.  *Id.* ¶ 19. Reed's markets and distributes its products to consumers and retail stores throughout California.  *Id.*  ¶ 19(a); *see also*  Declaration of Doug McCurdy in Support of Motion to Transfer ("McCurdy Decl.") ¶ 13 ("Reed's products, including Virgil's beverages, are distributed and sold nationwide through retailers and distributors.").  It does not maintain any offices in the Northern District of California.  McCurdy Decl. ¶ 13.

In its Transfer Motion, Reed's asks the Court to transfer the case to the District of Connecticut under 28 U.S.C. § 1404(a), asserting that "substantial convenience and fairness considerations favor[ ] Reed's home forum" because "[t]he proposed class and alleged conduct are nationwide;[2] the relevant corporate witnesses—regulatory, marketing, R&D, finance— and the documents concerning product formulation, label development, regulatory compliance, and sales are overwhelmingly located in or near Connecticut."  Transfer Motion at ECF p. 3.[3]

Reed's has supplied the declaration of its Chief Financial Officer, Doug McCurdy, in support of the Transfer Motion.  According to McCurdy,  "[t]he key decisions concerning the formulation, labeling, packaging, and marketing of Virgil's beverages -- including the Virgil's

---

[2] Although the original complaint sought to assert claims on behalf of a nationwide class, the First Amended Complaint, which was filed on December 8, 2025, seeks to certify only a California Class.  FAC ¶¶ 174-183.  Nevertheless, Reed's reply brief, filed on December 12, 2025 (several days late) repeats the assertion that "Plaintiff is a single California purchaser seeking to represent a putative nationwide class under California and non-California law."  Reply at 4 (citing Complaint ¶¶ 10–12, 82–94). Reed's Motion for Leave to File Late Reply is GRANTED.
[3] Confusingly, the page numbering of the Transfer Motion begins at page 12.  Therefore, the Court cites to the ECF page numbers of the document.

2

Black Cherry and Black Cherry Zero products -- were made by Reed's employees who are based in, or report to, Reed's Norwalk, Connecticut headquarters." McCurdy Decl. ¶ 6. McCurdy states further that "the primary Reed's employees who are likely to be witnesses in this case. . . are based primarily in Norwalk, Connecticut, or report into Reed's Norwalk headquarters." *Id.* ¶ 8. McCurdy states that "[d]ocuments and electronically stored information ('ESI') relating to the formulation, labeling, marketing, and regulatory review of Virgil's products . . . are maintained on Reed's servers and systems that are administered from its Norwalk, Connecticut headquarters or by personnel who report there." *Id.* ¶ 11. He states that "[p]hysical business records relevant to Reed's corporate operations, including contracts and internal records relating to Virgil's products, are also kept at, or under the control of, personnel located at the Norwalk, Connecticut office." *Id.* ¶ 12.

Plaintiff does not dispute that this action could have been originally brought in Connecticut but contends transfer is inappropriate and would merely shift any inconvenience from Reed's to Plaintiff.

### B.    Discussion

Pursuant to 28 U.S.C. § 1404(a), a case may be transferred to any district where the action could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]" The district court has discretion to transfer cases based on the individualized facts of each case and considerations of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). In determining whether to transfer an action under § 1404(a), courts may consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-499.

The party that seeks a transfer of venue under § 1404(a) bears the burden of showing that the transfer is appropriate. *Fabus Corp. v. Asiana Exp. Corp.*, Case No. C-003172, 2001 WL

United States District Court
Northern District of California

253185, at * 1 (N.D. Cal., March 5, 2001) (citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316-17 (9th Cir.1985), rev'd in part on other grounds by *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)).  Typically, a party seeking transfer must make "a strong showing . . . to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  In the context of a class or collective action, however, the named plaintiff's choice of forum is given less weight.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). "The rationale for a diminished degree of deference is that 'where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.'" *Hendricks v. StarKist Co.*, Case No. 13-cv-0729 YGR, 2014 WL 1245880, at *2 (Mar. 25, N.D. Cal., 2014) (quoting *Koster v. (Am.) Lumbermens Mut. Cas., Co.*, 330 U.S. 518, 524 (1947)).

In *Hendricks*, the court summarized the considerations that determine the degree of deference to which the plaintiff's choice of forum is entitled in the class action context as follows:

> [C]ourts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action. *Belzberg*, 834 F.2d at 739 (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968)). Plaintiff's choice of forum would receive only minimal deference if the operative facts had not occurred within the forum and the forum had no interest in the parties or subject matter. Id. In contrast, when "there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the Northern District of California, plaintiffs' choice of forum carries significant weight." *Roling v. E*Trade Sec., LLC*, 756 F.Supp.2d 1179, 1186 (N. D. Cal. 2010).

*Id.*, at *3.

Here, there is no evidence that Plaintiff has engaged in forum shopping as Plaintiff resides in California and purchased one of the products that is the subject of her claims in San Francisco, California. Therefore, the Court finds that it is appropriate to afford some deference to Plaintiff's choice of forum, despite the fact that the case is brought as a putative class action.  The remaining factors courts consider to determine whether transfer is in the interest of convenience and fairness are either neutral or do not support transfer.  Plaintiff purchased the product that is the subject of

United States District Court
Northern District of California

her claims in California and asserts her claims under California law. Both parties have significant contacts with California and Reed's has not identified any non-party witnesses whose attendance could be compelled in the District of Connecticut if the case were transferred such that transfer would be warranted on that basis. As to access to proof, the Court notes that the physical location of party witnesses is of little significance because Plaintiff has agreed to remote depositions of witnesses; likewise, it is of no moment that Reed's documents that are stored electronically are maintained on servers that are maintained from its Norwalk, Connecticut headquarters as the burden of producing them will be the same regardless of where the case is litigated. Nor is there any indication that the production of any physical documents maintained at Reed's headquarters will be any more burdensome if the case is litigated in this Court than it would be if the case were transferred to Connecticut.

Accordingly, the Transfer Motion is DENIED.

## III.   MOTION TO DISMISS

### A.   Background

#### 1.  First Amended Complaint

In the FAC, which is the operative complaint, Plaintiff alleges that "[t]his case arises from Defendant's deceptive and misleading practices with respect to its marketing and sale of its beverages (the 'Products')." FAC ¶ 1. The FAC defines the term "Products" as follows:

> At the time of this filing, the following Virgil's products are included in this definition: HANDCRAFTED BLACK CHERRY and BLACK CHERRY ZERO. This definition is not exhaustive, and shall include all of Defendant's products that are similarly deceptively marketed.

FAC at 1 fn. 1. According to the FAC, Reed's has conducted a "marketing and advertising campaign focused on claims that appeal to health conscious consumers – specifically the importance of real fruit and its presence in the Products" – and "engages in a deceptive marketing campaign to convince consumers that the Products contain material amounts of the actual fruits shown in the marketing and on the labeling of the Products, they are nutritious and healthful to consume, and are more healthful than similar products." *Id.* ¶¶ 2-3.

Plaintiff alleges in the FAC that "the Products' dark red color combined with packaging

United States District Court
Northern District of California

that displays images of fresh cherries and prominently states, 'HANDCRAFTED BLACK CHERRY,' 'This black cherry indulgence will make every cherry lover smile,' and 'with the perfect cherry tang' establishes this belief with reasonable consumers." *Id.* ¶ 4.  This allegation includes two images of a "HANDCRAFTED BLACK CHERRY" product label.  *Id.* Plaintiff also alleges that Reed's makes "these same representations through a coordinated marketing campaign," and includes a number of images of what appears to be advertising of HANDCRAFTED BLACK CHERRY and ZERO BLACK CHERRY.  *Id.* ¶ 5.

Plaintiff alleges that "[t]he deception lies in the fact that the Products are devoid of real fruit or their juices. Rather than containing real cherries or juice derived from cherries, the Products contain 'natural flavors' and 'malic acid' and none of the vibrantly referenced and depicted cherries or derivative juice." *Id.* ¶ 6.   She further alleges that Reed's "additionally deceives Plaintiff and other reasonable consumers by using the artificial flavoring agent 'malic acid' without disclosing that the Product is artificially flavored." *Id.* ¶ 7; *see also id.* ¶¶ 54-100 (detailed allegations that although there are two forms of malic acid, a 2019 Technical Report, among other things, indicates that both forms are synthetic, and thus artificial, because they use petroleum-derived fumaric acid as the "starting material"). According to Plaintiff, reasonable consumers would not have purchased the Products if they had known about these misrepresentations and omissions or would have purchased them on different terms.  *Id.* ¶ 8. Plaintiff alleges that she "would purchase the Products again in the future if Defendant changed the composition of the Products so that it conformed to its labeling and marketing." *Id.* ¶ 18(h).

Plaintiff asserts the following claims on behalf of herself and the putative class: 1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.* under unfair, fraudulent and unlawful prongs; 2) violation of California's False Advertising Law ("FAL"), Business and Professions Code § 17500 *et seq.*; 3) violation of California's Consumer Legal Remedies Act ("CLRA"), Business and Professions Code § 1750 *et seq.*; and 4) unjust enrichment.  Plaintiff and the putative class seek declaratory and injunctive relief; restitution and/or disgorgement "of the monies Defendant wrongfully acquired by its illegal

United States District Court
Northern District of California

and deceptive conduct;" compensatory and punitive damages; and an award of attorneys' fees and costs.

In support of her California state law claims, Plaintiff points to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 331(b), which prohibits the misbranding of food, and implementing regulations issued by the Food and Drug Administration ("FDA"). *Id.* ¶¶ 103, 108. In particular, Plaintiff points to the FDA's "Flavoring Regulations," which "govern the labeling of flavors on food labels where the food does not contain the actual food ingredients, or enough of the actual food ingredients that are identified on the Principal Display Panel of the food to independently characterize the food." *Id.* ¶ 110 (citing 21 C.F.R. 101.22). According to Plaintiff, the Flavoring Regulations require that "even if a food or beverage is flavored with cherries, its label must state that it is 'Artificially Flavored' if an artificial substance is used to reinforce the flavor profile of the food product or to simulate or resemble a fruit flavor." *Id.* ¶114. Plaintiff further alleges that the Flavoring Regulations require that Reed's use the word "flavored" after the word "Cherry" on the Principal Display Panels of the Products because "the Products do not in fact contain real cherry juice, but instead are flavored by flavor compounds that are created to mimic and masquerade as the taste of the real fruit ingredients from cherries[.]" *Id.* ¶ 115.

Plaintiff states in the FAC that she does not assert claims under the FDCA or its implementing regulations but instead, "relies on the FDCA and the regulations promulgated by the FDA only to the extent that such laws and regulations have been independently and separately enacted as state laws or regulations and also provide a basis of liability under state statutory and state common law." *Id.* ¶ 127. Plaintiff alleges that her "state law claims are not preempted by the federal law because California law mirrors federal law and therefore the federal and state food labeling laws prohibit misbranded foods in an identical manner." *Id.* ¶ 131.

### 2.   The Motion

In the Motion to Dismiss, Reed's asks the Court to dismiss Plaintiff's FAC in its entirety. First, Reed's challenges Plaintiff's claims to the extent they are based on the theory that "the words 'Black Cherry,' cherry imagery, and a red hue allegedly communicate 'cherry juice' / 'real cherries,'" asserting that this theory is "expressly preempted by the Nutrition Labeling and

Education Act ('NLEA') because FDA's flavor regulations permit manufacturers to use fruit words and fruit vignettes to designate a product's characterizing flavor even when the product contains no such fruit or juice." Motion to Dismiss at 5 (citing 21 U.S.C. § 343-1(a); 21 C.F.R. §§ 100.1(c)(4), 101.22(i); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102–03 (N.D. Cal. 2012); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889–92 (C.D. Cal. 2013); 8-9)).

Second, Reed's contends Plaintiff has not plausibly alleged that a reasonable consumer would be deceived by its labelling because labels of which Reed's asks the Court to take judicial notice "all expressly state, 'Black Cherry Flavor.'" *Id.* at 5-6, 9-10 (citing Request for Judicial Notice; *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 632–34 (S.D. Ill. 2022); and *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, (S.D. Cal. Mar. 1, 2019)).

Third, Reed's challenges Plaintiff's " 'artificial flavor malic-acid' theory" – that is, her allegation that Defendant uses malic acid to flavor the Products (rather than as an acidulent) and therefore they must be labelled with an "artificially flavored" label – on the grounds that it is "premised on speculation as to probabilities and pleaded as a regulatory conclusion without product-specific facts establishing either (a) that the malic acid in these products is the 'artificial' form (DL-malic acid), or (b) that malic acid's function in these products is to "impart flavor" (as opposed to acting as an acidulant/pH control agent or a general taste modifier)." *Id.* at 6 (citing 21 C.F.R. § 101.22(a)(1); and *Jordan v. Coca-Cola Co.*, No. 4:23-cv-00028-SEP, 2025 WL 917216, at *[] sic (E.D. Mo. Mar. 26, 2025); *Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23-cv-00219-H-DDL, 2023 WL 3829694, at *[] sic (S.D. Cal. June 5, 2023)). Reed's further asserts that "[i]mposing a state-law duty to label 'artificially flavored' based on that assumption is . . . a non-identical requirement" and therefore "Plaintiff's theories . . . are preempted and must be dismissed." *Id.* at 11.

Fourth, Reed's contends Plaintiff's UCL, FAL and UCL claims sound in fraud and therefore must meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at 12-13. According to Reed's, Plaintiff has not met this standard because the complaint does not allege sufficient facts about the "what," "when," "where," and "how" of the

8

alleged fraud. *Id.*

Fifth, Reed's asserts Plaintiff does not have standing under Article III of the Constitution to seek injunctive relief because she has alleged only that "she would purchase again if Reed's 'changed the composition.'" *Id.* at 13 (citing FAC ¶ 18(h)). According to Reed's, this "conditional allegation is speculative and does not plead an imminent future injury" and therefore the "injunctive claim" should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Id.*

Sixth, Reed's asserts that the Court should dismiss Plaintiff's requests for "equitable monetary relief" because she has not adequately alleged that her legal remedies are inadequate, as required under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). *Id.*

Finally, Reed's asserts that the unjust enrichment claim is duplicative of Plaintiff's other claims and therefore should be dismissed under *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). *Id.* at 14.

## B.    Discussion

### 1.   Legal Standards

#### a.   Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Tombly*, 550 U.S. at 557) (alteration in original).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

### b.   Rule 12(b)(1)

"Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing." *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1208 (S.D. Cal. 2023) (citing *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010)).

### c.   Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ. P. 9(b).  To meet this requirement, "[a]verments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted). Allegations of fraud must be specific enough to give the defendant "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal quotation marks omitted).

United States District Court
Northern District of California

### 2.  Request for Judicial Notice

Reed's asks the Court to take judicial notice of three Virgil's black cherry beverage labels obtained by a Reed's attorney on December 22, 2025 from "publicly available webpages displaying Virgil's 'Black Cherry' product images and ingredient statements."  Scharf Decl. ¶¶ 1-3 & Exs. 1-4.  "In the context of food labels, courts regularly take judicial notice of product labels when those product labels form the basis of the relevant causes of action."  *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *3 (N.D. Cal. Oct. 6, 2020).   Here, however, the labels submitted by Reed's are materially different from the ones shown in the FAC because they include the phrase "natural black cherry *flavor*" or "black cherry *flavored*" on the front label, in contrast to the ones shown in the FAC.  *See* FAC ¶ 4 (emphasis added). Furthermore, these labels post-date Plaintiff's purchase of the Product by approximately two years.  Because these are not the labels that form the basis of Plaintiff's claims they shed no light on the adequacy of Plaintiff's allegations.  Therefore, the Court DENIES Reed's request for judicial notice.  *See Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2023 WL 8813517, at *4 (N.D. Cal. Dec. 19, 2023) (denying as moot request for judicial notice where court's analysis "would not change even if it . . . considered the documents in question"); *Marino v. YummyEarth, Inc.*, No. 22-CV-02739-VC, 2022 WL 16912389, at *1 (N.D. Cal. Nov. 3, 2022) ("[T]his order relies primarily on the label included in the complaint because that is the version [Plaintiff] allegedly relied on.").

### 3.  Whether Claims are Preempted Under Federal Law

The FDCA, as amended by the NLEA, "expressly preempts all state laws that 'directly or indirectly' establish 'any requirement for the labeling of food' not identical to federal requirements."  *Branca v. Bai Brands, LLC*, No. 3:18-CV-00757-BEN-KSC, 2019 WL 1082562, at *6 (S.D. Cal. Mar. 7, 2019) (quoting 21 U.S.C. § 343-1(a)(3)). "These federal requirements include the 'comprehensive scheme' of regulations promulgated by the FDA under the FDCA concerning the labeling of flavors and flavorings in food products."  *Id.*  (citing *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074 GW (PLAx), 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011); 21 C.F.R. § 101.22).

United States District Court
Northern District of California

Reed's contends Plaintiff's claims are inconsistent with federal regulations, and therefore preempted, because: 1) "Plaintiff's 'Black Cherry means real cherries or cherry juice' theory attacks labelling expressly permitted under FDA's flavor rules"; and 2) Plaintiff's allegations that malic acid is used as a flavor in the Products, which therefore necessitates an "artificially flavored" statement on the label, is based on speculation and therefore Plaintiff seeks to impose a broader state-law duty than federal law imposes.  Both preemption arguments turn on 21 C.F.R. § 101.22(i), which states, in relevant part, as follows:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

(iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.

(2) If the food contains any artificial flavor which simulates,

12

resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored".

21 C.F.R. § 101.22(i) ("Flavoring Regulations"). The Court finds that both of Plaintiff's theories are consistent with the Flavor Regulations and therefore, that neither is preempted.

a. "Black Cherry means real cherries or cherry juice" theory

Under the Flavoring Regulations, "the 'depictions of ... fruit[s],' [21 C.F.R.] § 101.22(i)(1), on the packaging of the Products trigger the exception of 21 C.F.R. § 101.22(i)(1)(i) because 'the [beverages allegedly] contain[ ] no such ingredient' and the exception therefore requires that 'the name of the characterizing flavor . . . be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor.'" *Campbell v. Arizona Beverages USA LLC*, No. 22-CV-02752-JST, 2023 WL 2764123, at *4 (N.D. Cal. Mar. 31, 2023) (holding that false advertising claims based on failure to include the word "flavored" on label that depicted fruit that was not contained in the product was not preempted); *see also Marino v. YummyEarth, Inc.*, 22-cv-02739-VC, 2022 WL 16912389, at *1 (N.D. Cal. Nov. 3, 2022) (holding plaintiff's claims aimed at product labeled "fruit snacks" were not preempted where the plaintiff alleged that the product fell within the exception of Section 101.22(i)(l)(i) but did not contain the mandatory term "flavored" in its name). Thus, Plaintiff's claim that Reed's labels are deceptive because they do not include the word "flavored" immediately after the words "black cherry" amounts to an allegation that the Products' labels violate the FDA regulation in this regard. *Id.* Accordingly, this theory is not preempted.

Reed's relies on *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) and *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) in support of a contrary conclusion but neither case is on point. In *Viggiano*, the plaintiff asserted false advertising claims challenging labels on diet sodas stating that the sodas contained "all natural flavors" where "each flavor of soda allegedly contain[ed] two synthetic ingredients . . . : acesulfame potassium ('ace-k') and

United States District Court
Northern District of California

13

sucralose[,]" which were "purportedly artificial sweeteners and/or 'flavor enhancers.'"

944 F. Supp. 2d at 881. The court found that the FDCA expressly preempted the plaintiff's claim

that the presence of sucralose in a product rendered the label deceptive because the label was

consistent with 21 C.F.R. § 101.22(i)(1), which "provides that a manufacturer can use a 'natural

flavor' label on a product even if the product contains artificial, non-flavoring ingredients, so long

as the 'characterizing flavor' is, in fact, natural." *Id.* at 888.  In support of this conclusion, the

court explained:

> [T]he synthetic ingredients he cites in the complaint—ace-K and sucralose—are artificial sweeteners or "flavor enhancers." Under FDA regulations, sucralose "may be used as a sweetener in foods generally." 21 C.F.R. § 172.831. Similarly, ace-k "may be safely used as a general-purpose sweetener and flavor enhancer in foods generally." 21 C.F.R. § 172.800. A "flavor enhancer" is a "[s]ubstance[ ] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o ) (11) (emphasis added). *By definition, therefore, neither sucralose nor ace-k are "flavors," as they do not give the product an original taste*—rather, they sweeten or amplify whatever characterizing flavor it has from another source.

*Id.* at 889 (emphasis added). In contrast to the plaintiff in *Viggiano*, Plaintiff here asserts her

labelling claims in connection with a *flavor* (black cherry) and in reliance on a regulation that

establishes labeling requirements governing statements about flavor.   Because the claims in

*Viggiano* did not relate to the flavor regulation that Plaintiff here bases her claims upon, it is not

on point.

Likewise, *Lam* is distinguishable from the facts alleged here.  In that case, the plaintiff

challenged labels on fruit snacks (Fruit Roll-Ups and Fruit by the Foot) that included the

statements "fruit flavored snack[,]" "naturally flavored" and "strawberry naturally flavored."  859

F. Supp. 2d at 1100.  The court found that such labelling was permitted under to 21 C.F.R. §

101.22(i), observing that "under 21 C.F.R. § 101.22(i), a product may be labeled as 'fruit flavored'

or 'naturally flavored,' even if it does not contain fruit or natural ingredients." *Id.*  at 1102-03.

Because the plaintiff in *Lam* asserted claims premised on a labeling requirement that was more

stringent than the one imposed by the federal regulations, the court concluded that those claims

were preempted by federal law. *Id.*  at 1103.  Here, in contrast, the statements that Plaintiff

United States District Court
Northern District of California

challenges on the Product labels do *not* include the word "flavored" and therefore are not in compliance with 21 C.F.R. § 101.22(i). Therefore, *Lam* is not on point.

b.    Malic acid as flavoring theory

Reed's challenges as speculative Plaintiff's allegations that: 1) the malic acid used in the Products is synthetic even though she does not specify that the malic acid is DL-malic acid (and therefore synthetic) as opposed to L-malic acid (which Reed's contends is naturally occurring); and 2) the malic acid contained in the Products is used to "impart flavor" as opposed to being used as an "acidulant/pH control agent or a general taste modifier." Motion at 6. Therefore, it asserts, Plaintiff's claims based on its malic acid flavoring theory sweep more broadly than the federal regulations and are preempted. *Id.* The Court rejects these arguments.

As discussed above, the Flavoring Regulations define the terms "artificial flavor " or "artificial flavoring" as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22(a)(1). In other words, in order to prevail on her malic acid flavor theory, Plaintiff will need to establish *both* that the malic acid used in the Products is "artificial" within the meaning of the regulation and that it is used "to impart flavor."

Plaintiff has plausibly alleged  the malic acid used in the Products is synthetic, regardless of whether it is DL-malic acid or L-malic acid, offering detailed allegations in support of her assertion that even if the Products contain L-malic acid, the malic acid is synthetic because, among other things, the starting material from which it is made is petroleum-derived fumaric acid. *See* FAC ¶¶ 54-100. Other courts have found similar allegations to be sufficient. For example, in *Squeo v. Campbell Soup Co*., the plaintiffs challenged a product label stating "No Artificial Colors, Flavors or Preservatives" where the ingredient list reflected that the product contained citric acid. No. 24-CV-02235-SVK, 2024 WL 4557680, at *1 (N.D. Cal. Oct. 22, 2024). The complaint alleged that "[w]hile citric acid can form naturally in fruit, 'it is not the naturally occurring citric acid, but the manufactured citric acid . . . that is used extensively as a food and beverage additive,' and 'it is not commercially feasible to use natural citric acid extracted from

15

United States District Court
Northern District of California

fruits.' " *Id.* The defendant brought a motion to dismiss under Rules 12(b)(6) and 9(b) arguing – like Reed's does in this case -- that the plaintiffs' claims failed because the plaintiffs "speculate[d] that the [product] contain[ed] artificially produced citric acid based on 'citric acid production generally.'" *Id.* at \*4.

The court in *Squeo* disagreed, finding that "two key allegations" supported the inference that the product in that case (Cape Cod chips) included manufactured, as opposed to naturally produced, citric acid: (1) "it is not the naturally occurring citric acid, but the manufactured citric acid . . . that is used extensively as a food and beverage additive"; and (2) "it is not commercially feasible to use natural citric acid extracted from fruits." *Id.* See FAC ¶¶ 23-24 (emphasis omitted). The court continued:

> Defendants essentially counter that Plaintiffs speculate that the chips contain artificially produced citric acid based on "citric acid production generally." See Motion at 6-8 (emphasis omitted). In Defendants' view, Plaintiffs cannot simply rely on generalized allegations and must instead "demonstrate that the specific citric acid used in the chips is artificial." *See id*. at 8. The Court disagrees that either of Rules 12(b)(6) or 9(b) imposes such a stringent burden on a plaintiff at the pleading stage. As explained above, Plaintiffs' well-supported allegations render it highly likely that the citric acid included in the chips was artificially produced. At the very least, those allegations permit the Court to reasonably infer that the chips contain artificially produced citric acid. See *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) ("A plausible claim includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " (citation omitted)).

*Id.* The Court agrees with the reasoning in *Squeo* and finds that the same reasoning applies here. Assuming Plaintiff's allegations to be true, as is appropriate at the pleading stage of the case,  it appears highly likely that the malic acid used in the Products is synthetic.

Reed's cites no binding or persuasive authority to the contrary.  It cites *Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23-CV-00219-H-DDL, 2023 WL 3829694 (S.D. Cal. June 5, 2023) as an example of a case where allegations about malic acid were found to be insufficiently detailed to support a false advertising claim, but in that case the problem was that the plaintiff relied on a general allegation that "an independent third-party laboratory confirmed that the malic acid in the Products [was] DL malic acid, meaning the Products contain[ed]

16

artificial flavoring" but failed to identify which of the three products at issue in the case had been tested. *Id.* at *3-4. Applying Rule 9(b) because the plaintiff's claims sounded in fraud, the court explained that the plaintiff's testing allegation was insufficient to give the defendant notice of the "how" of the fraud because one of the three products, "the black cherry flavor, indicate[d] that it [was] artificially flavored on its label." *Id.* at *3. The court reasoned further, "[t]esting a product that lists that it is artificially flavored would presumably indicate the presence of DL malic acid and would thereby tell [the defendant] nothing about whether the remaining Products contain the natural L malic acid or the synthetic DL malic acid." *Id.* Therefore, the court concluded that the plaintiff's claims did not meet the heightened standard of Rule 9(b). *Id.*

Here, in contrast to *Scheibe*, Plaintiff does not rely on allegations that any of the Products were tested to determine the form of malic acid contained in them; rather, she relies on detailed allegations about how malic acid is produced in the industry based on scientific studies and reports to support an inference that the malic acid in the Products is synthetic regardless of whether it is DL-malic acid or L-malic acid. As discussed above, the Court finds these allegations to be sufficient.[4]

As to the question of whether the malic acid in the Products is used to "impart flavor," the Court finds that this question is more appropriately addressed at a later stage of the case, when a factual record has been developed. *See Branca v. Bai* Brands, LLC, No. 3:18-CV-00757-BEN-KSC, 2019 WL 1082562, at *8 (S.D. Cal. Mar. 7, 2019) (rejecting the defendant's argument that false advertising claims should be dismissed at the pleading stage because "malic acid in their Products functions exclusively as a pH control agent and not as a flavor" and observing that "[s]uch arguments are 'inappropriate for determination on a motion to dismiss.' ") (citing *Ivie v.*

---

[4] Reed's also cites to *Griffin v. Publix Super Mkts., Inc.*, No. 8:23-cv-1490-SDM-AAS, 2024 WL 2318143, at *2–*4 (M.D. Fla. May 22, 2024) in support of its position. In that case, the plaintiff alleged that the product label was deceptive under Florida law because it stated that the product was "naturally flavored," even though the product contained "an artificial type of 'malic acid,' not the natural type of malic acid found in apples and strawberries." 2024 WL 2318143, at *1 (M.D. Fla. May 22, 2024). Although the court found the plaintiff's claims to be "fanciful," it did not address the question of whether the allegations relating to malic acid were sufficiently detailed to satisfy Rule 12(b)(6) or Rule 9(b) and the court's conclusions do not appear to have turned on that question. Therefore, the case does not shed light on that issue here.

17

*Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at \*10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether [the ingredients are] used as a sweetener and/or . . . a flavoring agent in this particular product . . . are inappropriate for determination on a motion to dismiss."); *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at \*4-5 (S.D. Cal. Mar. 7, 2018) (concluding that whether malic acid is a "flavor" under federal regulations is a "factual determination that would be inappropriately resolved on a motion to dismiss")).

Therefore, the Court rejects Reed's arguments that Plaintiff's claims should be dismissed on the pleadings because they are preempted by federal law. The Court also finds that Plaintiff's claims are sufficiently alleged to the extent they are based on Plaintiff's "malic acid flavor" theory for the reasons stated above.

### 4. Whether a Reasonable Consumer Would be Deceived by Labels

Plaintiff's false advertising claims are governed by the reasonable consumer standard, which requires that Plaintiff "show that 'members of the public are likely to be deceived'" by the defendant's product label. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).[5] "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" on the pleadings and thus, it is a "rare situation in which granting a motion to dismiss [on this issue] is appropriate." *Id.* at 939.

Here, Plaintiff has plausibly alleged a fraudulent omission of fact under California law based on Reed's use of cherry representations and its failure to include "flavor" disclosures or indicate that the Products contain artificial flavors. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006) ("to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant

---

[5] Plaintiff contends the reasonable consumer standard does not apply to UCL unlawful prong claims asserted based on violations of the Sherman Law. Opposition at 7 n. 6. Reed's did not respond to this assertion in its Reply brief and therefore, the Court assumes that Plaintiff is correct. However, because the Court finds that the allegations are sufficient to allege that a reasonable consumer would be deceived by the Product labels, it need not decide whether that standard applies to all of Plaintiff's claims.

United States District Court
Northern District of California

was obliged to disclose"). Therefore, the Court finds that Plaintiff's allegations that a reasonable consumer would be deceived by the Product label are sufficient to survive a motion to dismiss based on the pleadings.

Reed's has cited to two cases in support of its brief argument that its labels would not deceive a reasonable consumer, *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 632–34 (S.D. Ill. 2022) and *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, (S.D. Cal. Mar. 1, 2019). Both cases involve products that include "flavored" statements on the labels, in contrast to the labels at issue here. Therefore, the Court concludes that neither case is on point and rejects Reed's argument that this is one of the rare cases where this issue should be decided on the pleadings.

### 5. Whether Rule 9(b) Heightened Pleading Standard is Met

Plaintiff's claims under the UCL, CLRA and FAL that sound in fraud must meet the heightened pleading requirement of Rule 9(b). Plaintiff's allegations are sufficient to meet this requirement. In particular, she identifies the "who" (Reed's), "what" and "where" (labels on the Products that include cherry images and references to "black cherry" without including the word "flavored" or language indicating the Products contain "artificial flavors"), "when" (in 2023), and "how" (as a result of reasonable reliance on deceptive statements and omissions made in violation of California law). Courts in this district have found that similar allegations in false advertising cases involving product labels are sufficient to meet the requirements of Rule 9(b). *See. e.g., Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011); *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010). Therefore, the Court rejects Reed's challenge to Plaintiff's claims under Rule 9(b).

### 6. Whether Plaintiff has Standing to Seek Injunctive Relief

Reed's argues that Plaintiff does not have standing to seek injunctive relief because she has not alleged a "real and immediate threat of future injury." Motion at 13 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). In particular, it asserts, Plaintiff's allegation that she "*would* purchase the Products again in the future if Defendant changed the composition of the

19

Products so that it conformed to its labeling and marketing[,]" FAC ¶ 18(h) is too speculative to meet this requirement because it is conditional. Motion at 13 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–72 (9th Cir. 2018)). Plaintiff concedes that the FAC "fails to satisfy the requirements needed for injunctive relief" and asks the Court to dismiss its claims for injunctive relief without prejudice so that she "can provide additional facts to satisfy the requirements under *Davidson*." Opposition at 1 fn. 1.

Accordingly, the Court GRANTS the Motion to Dismiss on this issue and dismisses Plaintiff's claim for injunctive relief without prejudice. Plaintiff may file a second amended complaint to allege, if she can, facts sufficient to establish standing to pursue injunctive relief.

### 7. Whether Plaintiff's Request for Equitable Monetary Relief is Adequately Alleged

Reed's argues, in a few sentences, that Plaintiff's claim for equitable monetary relief should be dismissed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) because she has an adequate legal remedy. Motion at 12. The Court disagrees.

In *Sonner*, the plaintiff had asserted class action claims for both damages and equitable relief under the UCL and CLRA but "strategic[ally]" dropped her sole state law claim for damages on the eve of trial so that she could try the remaining claims, for equitable and injunctive relief, as a bench trial rather than a jury trial. 971 F.3d at 837. The district court then dismissed the plaintiff's restitution claim on the basis that there was an adequate remedy at law. *Id.* The Ninth Circuit affirmed. *Id.* at 844. As Judge Freeman observed in *Jeong v. Nexo Fin. LLC*, "[c]ourts in the Ninth Circuit are divided on how exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage." No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (citing cases). Judge Freeman found that "*Sonner* provides limited guidance for pleading claims for legal and equitable relief" and therefore concluded that it does not "impose strict requirements at the pleading stage." *Id.* (citing *Freeman v. Indochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Byton N. Am.*

United States District Court
Northern District of California

*Co. v. Breitfeld*, No. CV 19–10563–DMG (JEMx), 2020 WL 3802700, at \*9 (C.D. Cal. Apr. 28, 2020) ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent."). This Court agrees with Judge Freeman's conclusion in *Jeong* and therefore rejects Reed's argument that Plaintiff's claims for equitable monetary relief should be dismissed on the pleadings.[6]

### 8.   Whether Unjust Enrichment Claim Should be Dismissed as Redundant

In the Motion, Reed's contends Plaintiff's unjust enrichment claim should be dismissed on the basis that under California law, unjust enrichment "is not a standalone cause of action where it simply repackages the same alleged misconduct and requested restitution." Motion at 14 (citing *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015)). In its Reply brief, however, Reed's implicitly concedes that "the Ninth Circuit has consistently allowed unjust enrichment claims to proceed under a 'quasi-contact' theory[,]" *Scheibe v. Perfect Keto Grp. LLC*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023), falling back on the argument that "[b]ecause Plaintiff has not plausibly pleaded deception, the quasi-contract theory fails as well." Reply at 8. As discussed above, the Court finds that Plaintiff has adequately alleged deception.  Further, the Court construes Plaintiff's unjust enrichment claim as a quasi-contract claim for restitution.  *See Scheibe,* 700 F. Supp. 3d at 937 ("In a consumer false advertising action an unjust enrichment claim on the theory alleged here, i.e., that the defendant was unjustly enriched through false and misleading product labeling, the Court may construe the claim as a quasi-contract claim for restitution.").  Therefore, the Court rejects Reed's assertion that the unjust enrichment claim should be dismissed.

---

[6] Although courts in the Ninth Circuit have observed that there is an "intra-circuit split on the issue of whether courts may allow UCL claims to proceed past the pleading stage when other adequate remedies exist[,]" *Byton N. Am. Co. v. Breitfeld,* 2020 WL 3802700, at \*9, Reed's did not bother to address that split in its Motion or provide any authority in support of its assertion that *Sonner* is relevant at the pleading stage of the case.  Even after Plaintiff flagged this issue in her Opposition, Reed's did not cite any additional authority in support of its argument in its Reply brief, simply repeating its assertion that Plaintiff's claims for equitable monetary relief should be dismissed under *Sonner*.  The Court also notes that many of Reed's citations contain square brackets that were apparently intended to provide pin citations but were left blank.  *See, e.g.,* Motion at 6, 11, 12.  It is the burden of the moving party to cite relevant authority in support of its arguments and to provide *complete* citations.  The cursory arguments and sloppy citations in Reed's motion papers fall far short of the Court's expectations.

United States District Court
Northern District of California

### 9. Conclusion

The Motion to Dismiss is DENIED except as to Plaintiff's claim for injunctive relief, which is dismissed without prejudice. Plaintiff may file a Second Amended Complaint addressing only the defect related to her request for injunctive relief no later than **April 8, 2026.**

**IT IS SO ORDERED.**

Dated: March 5, 2026

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

22